# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL KHALIFAH ROULHAC,** | ) | **Civil No. 1:12-CV-311** |
| | ) | |
| **Plaintiff,** | ) | **(Judge William W. Caldwell)** |
| | ) | |
| | ) | |
| **vs.** | ) | **(Magistrate Judge Carlson)** |
| | ) | |
| **R.M. LAWLER,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

Plaintiff, Paul Khalifah Roulhac, first initiated this action by filing a *pro se* complaint on February 16, 2012, alleging that defendants, R.M.Lawler, Mary Lou Showalter, Ms. Johnson, Ms. Fisher, Jeffrey Beard, Susan McNaughton (collectively, "Commonwealth Defendants"), Michael Curley, Dr. Bergman, other medical staff at MCF-Michigan (collectively, "Michigan Defendants") and defendants employed at Hackley Lakeshore Hospital ("Hackley"), in their individual capacities, "acted in supervisory liability and deliberate indifference," under the color of law, to violate plaintiff's rights guaranteed under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Currently pending before this court are defendants' respective motions to dismiss the plaintiff's complaint for failing to state a claim

upon which relief can be granted and a lack of subject matter and personal jurisdiction, pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure. The motions have been fully briefed and referred to the undersigned for purposes of issuing this report and recommended disposition. For the reasons that follow, we recommend that the motions to dismiss be granted as to all counts and all defendants.

## II.  __BACKGROUND__

The plaintiff has been incarcerated since November of 2000, spending the majority of that time in Pennsylvania state prisons. (Doc. 1, Compl. ¶ 17.) On or about March of 2010, plaintiff was informed that he would be transferred to MCF–Michigan as part of an initiative by the Pennsylvania Department of Corrections to alleviate overcrowding of the Pennsylvania institutions. (Doc. 1, Compl. ¶ 23.) Plaintiff alleges that he was considered a chronic clinic patient while incarcerated at SCI-Huntington and that defendants Beard and McNaughton made assurances that, *inter alia*, no prisoners with medical problems would be transferred.[1] (Doc. 1, Compl. ¶¶ 18, 21.) Moreover, plaintiff alleges that he received personal

---

[1] Plaintiff allegedly underwent three operations prior to his transfer to Michigan, two of which took place while he was incarcerated at SCI-Huntington. (Doc. 1, Compl. ¶ 19.) The complaint is silent as to what these operations entailed, or what medical conditions the plaintiff claims to have.

assurances from defendants Lawler, Showalter, Shoaf, Johnson and Fisher that he was not eligible for the transfer to Michigan based on his medical condition. (Doc. 1, Compl. ¶ 22.)

Notwithstanding these alleged assurances, plaintiff was ultimately transferred to MCF-Michigan.[2] (Doc. 1, Compl. ¶ 27.) Roulhac claims that his well being was neglected while at MCF-Michigan and as a result his health worsened during this time. (Doc. 1, Compl. ¶ 28.) The plaintiff alleges that MCF-Michigan does not have an infirmary and that there was no medical staff on site after 8:30 p.m. because of an insufficient budget. (Doc. 1, Compl. ¶¶ 28, 29.) Plaintiff further alleges that the staff at MCF-Michigan ignored his complaints in regards to his medical needs, and that this alleged indifference was a result of a conspiracy between, MCF-Michigan superintendent Curley, the doctor and medical staff at MCF-Michigan, Hackley Lakeshore Hospital and all of the Pennsylvania Department of Corrections Defendants. (Doc. 1, Compl. ¶¶ 30-32.) This aspect of the complaint is also vague with respect to what the plaintiff's medical needs were during this time, what services he claims to have required but was denied, and what the actual effects of this delayed

---

[2] It is unclear exactly when the plaintiff was transferred, as paragraph 27 of the complaint reads, "On 3, 2010, Plaintiff was transferred…in violation of his constitutionally protected rights." Based on this paragraph, this Court interprets the plaintiff to claim that the transfer occurred at some time in March of 2010, although the exact date is immaterial for purposes of this report.

or denied care were. Notably, the plaintiff does acknowledge that he was provided medical care during this time, including being transported on multiple occasions to an outside hospital for treatment.

In September of 2010, plaintiff returned to the Pennsylvania Department of Corrections after his health allegedly deteriorated in an unspecified way while he was housed at MCF-Michigan, and as a result, Roulhac allegedly has had to undergo a series of operations and treatments upon his return. (Doc. 1, Compl. ¶¶ 33-35.) Plaintiff claims to have filed the proper grievances in Michigan and in Pennsylvania to exhaustion and now brings the current §1983 civil complaint. (Doc. 1, Compl. ¶ 36.)

## III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The

facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. *Id.* at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than label and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. V. Higgins*, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a

district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgement."). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   **DISCUSSION**

### A.   **Personal Jurisdiction**

As a threshold matter, Hackley has moved the court to dismiss the claims against the hospital on the grounds that the court lacks personal jurisdiction over this defendant. We agree that personal jurisdiction over this defendant is lacking in this case.[3]

Perhaps predicting that a challenge to the court's personal jurisdiction over some or all of the defendants from Michigan was likely, the plaintiff made a spare

---

[3] The Michigan Defendants have not moved to dismiss the claims against them based upon a lack of personal jurisdiction. Although it appears that the same legal principles that compel us to recommend that the claims against Hackley be dismissed might have applied equally to the Michigan Defendants, lack of *in personam* jurisdiction is an affirmative defense that is waived unless raised in a timely manner. *See, e.g.*, *EF Operating Corp. v. American Buildings*, 993 F.2d 1046, 1048 (3d Cir. 1993); *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 269 (M.D. Pa. 2000). Because the Michigan Defendants have not raised this defense as part of their motion to dismiss, we find it inappropriate to consider the issue *sua sponte* in this report.

assertion in the form of a legal conclusion in the complaint as to why personal jurisdiction over the Michigan Defendants and Hackley should nevertheless be found satisfied in this case. In the complaint the plaintiff argues that this court has jurisdiction over the Michigan Defendants pursuant to 42 U.S.C. §§ 1331[4] and 1343, and that venue is proper in the Middle District of Pennsylvania because the "MCF[] defendants are and were under contract with [the DOC] defendants, were employed by and received payment from [the DOC] defendants, co-defendants were contracted to the same policy and rules and laws dealing with the plaintiff, and the agreement to transfer plaintiff occurred in this district." (Doc. 1, Compl., at p. 7 ¶¶ 15, 16.) Hackley disputes that it is properly subject to this court's personal jurisdiction, and has submitted an affidavit in support of its position that it lacks any meaningful contact with Pennsylvania, and discredits the plaintiff's generalized allegation that the hospital was an agent of the Pennsylvania or Michigan Departments of Corrections.

Personal jurisdiction "represents a restriction on judicial power . . . as a matter of individual liberty," and is relevant to whether a court may permissibly exercise judicial authority over a defendant and make judicial decisions affecting that

---

[4]This citation appears to be an obvious misnomer on Rouhlac's part since 42 U.S.C. §1331 was repealed in 1984 and was a provision of law which dealt with unemployment benefits for seamen.

defendant. *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Ins. Corp. of Ireland v. Comagnie dex Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). As another court in the Middle District of Pennsylvania explained, "the fundamental issue is not the court's ability to adjudicate the dispute but the court's ability to issue decisions affecting a given person's rights, [and therefore] a defendant may either invoke jurisdictional limitations or waive them." *Rantnetwork, Inc. v. Underwood*, Civ. A. No. 4:11-CV-1283, 2012 WL 1021326, at *7 (M.D. Pa. Mar. 26, 2012); see also Fed. R. Civ. P. 12(b)(2) and (h). As such, a defendant bears the burden of asserting that the court lacks personal jurisdiction. *Ruhrgas*, 526 U.S. at 584; *see also Rantnetwork*, 2012 WL 1021326, at *7.

Once a defendant has asserted a jurisdictional defense under Rule 12(b)(2), the burden shifts to the plaintiff to "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (alteration in original) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). Where there has been no evidentiary hearing, a plaintiff "need only establish a prima facie case of personal jurisdiction," because "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316

(3d Cir. 2007) and *Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). Nevertheless, it remains the plaintiff's burden to demonstrate that personal jurisdiction over a defendant exists. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) ("[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.") (citations omitted).

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)). Pennsylvania's long-arm statute is set forth at 42 Pa. Cons. Stat. Ann. §§ 5301-5322, and authorizes Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause of the Fourteenth Amendment. *Id.*

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant only if the defendant has sufficient "minimum contacts" with the state in which the court sits "such that maintenance of the suit does not offend traditional notions of fair play and substantial

justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)

(quotation omitted).

The Supreme Court has explained the importance of the minimum contacts

standard in our constitutional system:

> The concept of minimum contacts, in turn, can be seen to
> perform two related, but distinguishable functions. It
> protects the defendant against the burdens of litigating in
> a distant and inconvenient forum. And it acts to ensure
> that the States through their courts, do not reach out
> beyond the limits imposed on them by their status as
> coequal sovereigns in a federal system.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). The

requirement that a defendant have minimum contacts with a state before that state's

courts may exercise personal jurisdiction ensures that parties can reasonably

anticipate where they may be summoned into court, and affords potential defendants

the opportunity to adjust their conduct accordingly. *Id.* at 297. For this reason, it is

the potential defendant that must take affirmative steps to create the necessary

contacts with the forum, as "minimum contacts" can be formed only by "some act by

which the defendant purposely avails itself of the privilege of conducting activities

within the forum state, thus invoking the benefits and protections of its laws." *Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357

U.S. 235, 253 (1958)).

Federal courts recognize two types of personal jurisdiction. The first of these types is specific jurisdiction, which applies where the cause of action arises due to the defendant's contact with the forum. In general, specific jurisdiction permits a court to adjudicate the rights of a nonresident person whose activities were purposefully directed toward the forum state, and are related to the subject matter of the lawsuit, whereas general jurisdiction allows a court to adjudicate a dispute even when the nonresident person's connections to the forum are unrelated to the pending action, provided the nonresident has "systematic and continuous contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 415 n.9 (1984); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *Telcordia Tech Inc. v. Telkom S.A.*, 458 F.3d 172, 177 (3d Cir. 2006). In all inquiries regarding the existence of personal jurisdiction, the "central concern" is the particular set of facts that define "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

In this case, the plaintiff has not articulated whether he believes that general or specific jurisdiction provides a basis upon which this court can adjudicate the claims against Hackley, but we find in any event that the spare, conclusory assertions in the complaint do not suffice to support the exercise of general jurisdiction over this

defendant in Pennsylvania. Accordingly, we will limit our inquiry to whether specific jurisdiction exists in this case.

Synthesizing the governing law in this field, the Third Circuit Court of Appeals has explained that three factors determine whether a court may exercise specific jurisdiction over a defendant: (1) whether the defendant purposefully directed his activities toward the forum; (2) whether the litigation relates to at least one of those activities; and (3) if the first two requirements are met, the court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Burger King*, 471 U.S. 462, 476 (1985)); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319) (noting that it is "essential" that a defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

Thus, the first two parts of the test "determine whether a defendant has the requisite minimum contacts with the forum." *D'Jamoos*, 566 F.3d at 103. This test does not require the defendant's physical entrance into the forum. *Burger King*, 471 U.S. at 476; *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). Instead, when a defendant has deliberately engaged in significant

12

activities or created "'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 474, 475-76 (citations omitted) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 295 (citing *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)). At this point, litigation against the nonresident defendant becomes foreseeable, and "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.*

Lastly, we are to consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (alteration in original) (quoting *Int'l Shoe*, 326 U.S. at 320). As noted above, the presence of minimum contacts with the forum causes jurisdiction to become presumptively constitutional, and the defendant challenging a court's exercise of personal jurisdiction over him "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. In other words, once a plaintiff has established that a defendant has sufficient minimum contacts with the forum state, jurisdiction will be unreasonable only in "rare cases" where the defendants meets its "heavy" burden of demonstrating "an absence of fairness or lack of substantial justice." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998); *Grand Entm't Grp.*, 988 F.2d at 483. *See also*

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

With the foregoing legal guidelines in mind, we find that the plaintiff has failed to establish sufficient facts to make out a prima facie case that this court may exercise jurisdiction over Hackley. Regarding this particular defendant, a hospital, the plaintiff merely avers that Hackley, along with the Michigan Defendants "acted in conspiracy with DOC defendants." (Doc. 1, at ¶ 31.) The plaintiff relies on little other than generalized, conclusory allegations to demonstrate the existence of personal jurisdiction over Hackley and the Michigan Defendants in this action, and the allegations in these pleadings are simply insufficient. In fact, with respect to the issue of personal jurisdiction, the complaint consists of little "more than label[s] and conclusions, and a formulaic recitation of the elements of a cause of action [which] will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In marked contrast to Rouhlac's spare showing, Hackley has offered an affidavit from Lynn Smentek, which attests that Hackley Lakeshore Hospital not only does no business in Pennsylvania, but is also: (1) not assigned to any Michigan

correctional facility; (2) has not acted in conspiracy or in other manner with any of the Pennsylvania defendants; and (3) was not and is not under contract with either the Pennsylvania DOC or the Michigan DOC. (Doc. 25, Ex. 1, Affidavit of Lynn Smentek, ¶¶ 8-9.) Moreover, Ms. Smentek represents that Hackley has not contracted with any prison system to provide services to prisoners or staff, and neither Hackley, nor its parent, Trinity Health, have purposefully directed any activities in or toward Pennsylvania, or had any contact with the Commonwealth of Pennsylvania. (Id. at ¶¶ 9-10.)

In considering the spare and wholly inadequate allegations in the complaint, together with the attestations of Hackley through Lynn Smentek, which affirm that the hospital has not had sufficient minimum contacts with Pennsylvania to permit the exercise of personal jurisdiction over this defendant in this lawsuit, we agree that personal jurisdiction is lacking, and the complaint should be dismissed with respect to Hackley pursuant to Rule 12(b)(2).

### B.     Fifth Amendment Claims

Turning to the plaintiff's substantive allegations, he alleges that all of the defendants named in the complaint deprived him of his liberty without due process of the law in violation of the Fifth Amendment. (Doc. 1, Compl. ¶ 39.) This claim fails for a straightforward reason: the Fifth Amendment applies only to actions of the

federal government and thus, a due process claim may not be brought against a state actor for alleged violations of the Fifth Amendment. *See* U.S. Const. amend. V; U.S. Const. amend. XIV, § 1; *see also B&G Const. Co., Inc. v. Dir. Office of Worker's Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011); *Thomas v. Palakovich*, Civ. A. No. 3:11-CV-2172, 2012 WL 1079441, at *6 (M.D. Pa. Mar. 30, 2012). Claims for alleged due process violations brought against state actors must be brought under the Fourteenth Amendment. *Palakovich*, 2012 WL 1079441 at *6. Since, none of the defendants named in the complaint are federal government actors, the plaintiff's Fifth Amendment claims necessarily fail on the pleadings.

### C.    Fourteenth Amendment Due Process Claims

Plaintiff also alleges that his due process rights guaranteed by the Fourteenth Amendment were violated when he was transferred from SCI-Huntington to MCF-Michigan. The Due Process Clause of the Fourteenth Amendment provides that no "state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As such, in order to establish a Fourteenth Amendment claim a plaintiff must show that he was, in fact, deprived of a liberty interest by a state actor. *Maines v. Rendell,* 2011 WL 6153093 at *4 (W.D.Pa.

December 9, 2011).  In the absence of a constitutionally protected liberty interest there can be no violation of the fourteenth amendment's due process clause.  *Id.*[5]

It is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.  *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution."  Id.  Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution.  *See, e.g., Hassain v. Johnson*, 790 F.2d 1420 (9th Cir. 1986); *Serrano v. Torres*, 764 F.2d 47 (1st Cir. 1985).  Thus, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment.  *See, e.g., Gov't of Virgin Island v. Gereau*, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); *Rodriguez-Sandoval v. United States*, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta).  In short, well-settled law establishes that prisoners have no inherent constitutional right to

---

[5] While a plaintiff can establish a constitutionally protected right in either a livelihood, liberty, or property interest, plaintiff in the instant case only alleges a deprivation of a liberty interest, and thus we focus only on this alleged deprivation.

placement in any particular prison, to any security classification, or to any particular housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215 225 (1976); *Montanye*, 427 U.S. at 242; *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert.denied*, 429 U.S. 846 (1976). As the Supreme Court explained in *Olim*, "it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State." 461 U.S. at 248. Simply put, as a legal matter Rhoulac has no constitutional right to choose his prison, and he fails to state a claim for a violation of his right to due process based upon his transfer to a prison in Michigan.

In the instant case, the plaintiff was transferred from SCI-Huntington to MCF-Michigan on a temporary basis to help alleviate overcrowding in the Pennsylvania State Correctional Institutions. As the inmate does not have a fundamental right to be housed in the prison of his choice, and because the State has the right not only to transfer prisoners to other institutions within the state, but to other states as well; the plaintiff's 2010 transfer to MCF-Michigan was constitutionally permissible. As such the plaintiff had no liberty interest in remaining confined in a Pennsylvania correctional facility, and because the plaintiff fails to articulate a liberty interest

implicated by any named defendant, we recommend that his Fourteenth Amendment due process claims be dismissed.

### D.    Eighth Amendment Claims

The plaintiff also contends that the deprivation of his liberty interest in being transferred from SCI-Huntington to MCF-Michigan "amounts to a (sic) Eighth amendment of cruel and unusual punishment." (Doc. 1, Compl. ¶ 40.) As indicated above, we find that the plaintiff was not deprived of a liberty interest by any of the state actors named as defendants associated with this transfer.  As there is no deprivation of a liberty interest it follows that there can be no Eighth Amendment violation of cruel and unusual punishment based on such an interest.

To the extent that the plaintiff is alleging that the defendants are liable under the Eighth Amendment for deliberate indifference to his serious medical needs, we similarly find that the complaint fails to state a claim upon which relief could be granted.  Liberally construed, the gravamen of Rhoulac's complaint is that prison officials in Pennsylvania and Michigan have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs.  Rhoulac faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities.  To sustain such a claim, he must plead facts which:

[M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. *See Jones v. Beard*, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' *Farmer v. Brennan,* 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." *Garvey v. Martinez*, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Rhoulac is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". *Gindraw v. Dendler*, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; *see, e.g., Ham v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't*

*of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x

103 (3d Cir. 2006); *Bronson v. White*, No. 05-2150, 2007 WL 3033865 (M.D. Pa.

Oct. 15, 2007); *Gindraw v. Dendler*, 967 F.Supp. 833 (E.D. Pa. 1997), particularly

where it can be shown that significant medical services were provided to the inmate

but the prisoner is dissatisfied with the outcome of these services. Instead, courts

have defined the precise burden which an inmate must sustain in order to advance an

Eighth Amendment claim against a healthcare professional premised on allegedly

inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim,
> as it concerned [a care giver], because [the] allegations merely amounted
> to a disagreement over the proper course of his treatment and thus failed
> to allege a reckless disregard with respect to his . . . care. The standard
> for cruel and unusual punishment under the Eighth Amendment,
> established by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104
> (1976), and its progeny, has two prongs: 1) deliberate indifference by
> prison officials and 2) serious medical needs. "It is well-settled that
> claims of negligence or medical malpractice, without some more
> culpable state of mind, do not constitute 'deliberate indifference.' "
> "Nor does mere disagreement as to the proper medical treatment support
> a claim of an eighth amendment violation." . . . . [The inmate] alleged no
> undue delay in receiving treatment and, as the district court noted, the
> evidence he presented established that he received timely care . . . .
> Although [an inmate plaintiff] may have preferred a different course of
> treatment, [t]his preference alone cannot establish deliberate
> indifference as such second-guessing is not the province of the courts.

*James*, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris,* 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan,* 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Sherrer v. Stephen,* 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); *Czajka v. Caspari,* 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); *Lair v. Oglesby,* 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor

should have prescribed medication does not result in constitutional violation); *Martin v. Sargent,* 780 F.2d 1334, 1339 (8th Cir.1985) (inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; *see, e.g.*, *Gause v. Diguglielmo*, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Innis v. Wilson*, 334 F. App'x 454 (3d Cir. 2009)(same); *Rozzelle v. Rossi*, 307 F. App'x 640 (3d Cir. 2008)(same); *Whooten v. Bussanich*, 248 F. App'x 324 (3d Cir. 2007)(same); *Ascenzi v. Diaz*, 247 F. App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Guided by these well-established legal benchmarks, we find that the plaintiff's overly general complaints regarding his transfer from Pennsylvania to Michigan for several months to alleviate overcrowding, and about the medical care he received for unspecified health conditions, simply fail to state a claim upon which relief could be granted. The plaintiff alleges generally that he was a "chronic clinic patient," and he claims that he underwent three major operations prior to being transferred to Michigan. (Doc. 1, Compl., ¶¶ 18-19.) Nothing in these allegations is sufficient to inform the court or the parties as to whether the plaintiff did, in fact, have a "serious medical need," which is a threshold consideration in any claim for deliberate indifference under the Eighth Amendment.

Likewise, we find the plaintiff's allegations that his health declined and that his well-being was neglected while house in Michigan due to inadequate funding is also inadequate to state a claim. There is nothing in these allegations, or any other allegations in the complaint, to identify how the plaintiff's health allegedly worsened, or how his well-being was neglected, or what medical problems resulted from such alleged neglect. The complaint is plainly insufficient in terms of the allegations offered to support this constitutional claim.

The plaintiff does claim that while housed in Michigan, his health declined and he was, as a result, taken to the hospital a number of times for unspecified surgeries, and after several months a decision was made to return the plaintiff to Pennsylvania. (Doc. 1, Compl., ¶¶ 33-34.) The plaintiff does not further explain how he claims to have suffered, or how the defendants neglected his medical needs, or even what the "painful treatments" were that the defendants allegedly provided to him in response to his medical needs. Notably, however, the plaintiff does acknowledge that he was, on multiple occasions, transferred to a hospital so that he could receive medical care deemed necessary; this allegations thus undermines that plaintiff's otherwise general allegations of deliberate indifference by acknowledging that the defendants did, in fact, provide medical care for what he describes as serious and chronic health conditions. To the extent that the plaintiff suffered discomfort during this time, or in response to the treatments provided to him, without more we do not find that these spare allegations suffice to state a claim for deliberate indifference. Instead, what we are left with is a complaint that alleges that the plaintiff had unspecified medical conditions, that he received treatments for these conditions including transfers to outside hospitals, and that the plaintiff nevertheless experienced a decline in health during the time he was housed in Michigan. The complaint lacks allegations to show that any of the named defendants was actually deliberately indifferent to the

27

plaintiff's unspecified medical needs, or that the treatments the plaintiff admits to receiving were so lacking as to constitute deliberate indifference on the part of the defendants.

Because we find that the plaintiff's allegations against all defendants are inadequate to state a claim for deliberate indifference to his serious medical needs, we will recommend that this claim also be dismissed.

### E.    Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that in addition to the deprivation of his due process rights under the Fourteenth Amendment his rights asserting equal protection under the law were violated.  (Doc. 1, Compl. ¶ 41.)  The Fourteenth Amendment establishes, *inter alia*, that the state shall not "deny to any person within its jurisdiction equal protection of the laws."  U.S. Const. Amend. XIV, §1.  This is not to imply that all persons should be treated alike, but rather that all persons who are *similarly situated* should be treated alike.  *Artway v. Attorney General of State of N.J.,* 81 F.2d 1235, 1267 (3d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985)).  The defendants point out that the plaintiff not only "failed to allege any differential treatment between himself and any specific group or class of similarly situated individuals" and in fact, actually alleges that he was treated in exactly the

same manner as the other prisoners by being subject to this transfer to Michigan. (Doc. 24, Def. Brief at 6.) However, upon consideration we believe that the plaintiff was not attempting simply to distinguish himself from the other prisoners in the DOC, but instead to allege that he was treated differently than other prisoners in the custody of the Pennsylvania Department of Corrections who suffer from serious medical conditions.

Courts apply different levels of scrutiny when determining if a plaintiff has state a claim for an equal protection violation under the Fourteenth Amendment. If the claimant is part of a suspect class or if the right allegedly be infringed upon is a fundamental constitutional right, then the court will apply strict scrutiny to claims that a statute or state action violates the Equal Protection Clause. *See, e.g.*, *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (citing *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982)). However, other classifications are subject to a rational basis test. *Id.* Therefore, instead of being required to that what was done was suitably tailored to serve a compelling state interest, the defense is only required to show that the decision that was made was rationally related to a state interest. *Id.*

While plaintiff alleges that he is part of a distinct class, his allegation standing alone does not cause his claim to require strict scrutiny. Simply put, "[n]either

prisoners nor indigents are suspect classes." *Abdul-Akbar*, 239 F.3d at 217. We note that "strict scrutiny" is reserved for only a suspect class or quasi-suspect class[6] or a particular sub-set of fundamental constitutional rights[7]. *Id.* Because the plaintiff alleges no classification for himself involving a suspect, or even quasi-suspect class, and the rights implicated are not part of a limited group of fundamental constitutional rights, the plaintiff's equal protection claim is limited to an alleged "equal protection violation against a 'class of one.'" *Pressley v. Pa. Dep't of Corr.*, 365 F. App'x 329, 331 (3d Cir. Feb. 16, 2010). In order to succeed on a claim based on a "class of one" theory, the plaintiff must show that he was intentionally treated differently from others similarly situated, and that there was no rational basis for the treatment. Id. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)).

The plaintiff has made no allegations that are sufficient to show that his transfer to a prison in Michigan for several months in 2010 lacked any rational basis; indeed, the defendants have noted that the plaintiff's transfer was necessitated by

---

[6]

Suspect or quasi-suspect classes include alienage, race and ancestory but do not include classes such as gender and the elderly. *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976).

[7]

Fundamental constitutional rights include: right to a uniquely private nature, the right to vote, the right to interstate travel, all rights enumerated under the First Amendment and the right to procreate. *Id.*

overcrowding in Pennsylvania prisons. We do not find that the plaintiff has sufficiently alleged that a similarly situated inmate with an equally serious medical history was treated differently and, equally importantly, he has not alleged facts to suggest that there was no rational basis for this treatment. Accordingly, this claim should also be dismissed for failure to state a claim.

## V.    **RECOMMENDATION**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT defendant's motions to dismiss plaintiff's complaint (Docs. 19, 20, 25.) be GRANTED and all claims against all defendants be dismissed.

IT IS FURTHER RECOMMENDED THAT the complaint be dismissed without prejudice to the plaintiff being given a final opportunity to correct the pleading deficiencies identified in the complaint. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). Furthermore, "[d]ismissal with prejudice is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* In this case we recommend that the plaintiff be granted leave to

amend the complaint, provided he does so promptly, and within 20 days of an order

addressing this report.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days of being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge

Date: May 2, 2013