## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| PAUL KHALIFAH ROULHAC, | : | CIVIL NO. 1:12-CV-00311 |
| | : | |
| Plaintiff, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | |
| R.M. LAWLER, *et. al*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |


## REPORT AND RECOMMENDATION

In this civil rights action, defendant Hackley Lakeshore Hospital
("Hackley") has filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and
12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I
recommend granting Hackley's motion.

## I.     Background and Procedural History.

On February 16, 2012, the *pro se* plaintiff, Paul Roulhac ("Roulhac"), an
inmate currently confined at the State Correctional Institution at Graterford ("SCI
Graterford"), initiated this action by filing a complaint against the following 11
defendants: (1) R.M. Lawler, the Superintendent at SCI Huntingdon; (2) Mary Lou
Showalter, the health care administrator at SCI Huntingdon; (3) FNU Shoaf, a
medical doctor at SCI Huntingdon; (4) FNU Fisher, a counselor at SCI

Huntingdon; (5) FNU Johnson, the FA-Block Counselor at SCI Huntingdon; (6) Jeffery Beard ("Beard"), the Secretary Commissioner for the Pennsylvania Department of Corrections ("DOC"); (7) Susan McNaughton, the DOC Press Secretary;[1] (8) Michael Curley, the Superintendent at the Muskegon Correctional Facility in Michigan ("MCF Michigan"); (9) FNU Bergman, a doctor at MCF; (10) John Doe's, medical staff at MCF[2]; and (11) "defendants of" Hackley. *Doc.* 1 at 5-6. Along with his complaint, Roulhac filed a motion to proceed *in forma pauperis*, which was granted by the Court. *See Doc.* 8. Generally, in his complaint, Rouhlac alleges that the defendants, in their individual capacities, "acted in supervisory liability and deliberate indifference," under the color of law, to violate his rights guaranteed under the Fifth, Eighth, and Fourteenth Amendments. *Doc.* 1 at 10.

Upon being served with the complaint, Hackley and the other defendants filed respective motions to dismiss. *Docs.* 19, 20, & 25. On May 2, 2013, Chief Magistrate Judge Carlson considered the defendants' motions and recommended dismissal of Roulhac's claims. *Id.* The Court adopted Judge Carlson's Report and Recommendation, but gave Roulhac leave to amend. *Doc.* 38.

---

[1] Collectively, Lawler, Showalter, Johnson, Fisher, Beard, and McNaughton are referred to as the "Commonwealth Defendants."

[2] Collectively, Curley, Bergman, and the John Does are referred to as the "MCF Michigan Defendants."

On July 3, 2013, a week after Roulhac's leave to amend lapsed, Judge Carlson recommended that the complaint be dismissed with prejudice. *Doc.* 42. Subsequently, on July 19, 2013, within the time permitted for objections, Roulhac filed a single document consisting of objections to the second Report and Recommendation, as well as an amended complaint. *Doc.* 45. As a result, the Court declined to adopt Judge Carlson's second Report and Recommendation, and the case was remanded to the undersigned. *Docs.* 46 & 52.

On August 29, 2013, Hackley filed a motion to dismiss Roulhac's amended complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. *Doc.* 47. On August 30, 2013, Hackley filed a timely and proper brief in support. *Doc.* 48. On September 17, 2013, Rouhlac filed a brief in opposition. *Doc.* 51. Hackley elected not to file a reply brief, and, the briefing period having closed, the motion is ripe for disposition on the merits.

## II.    __Roulhac's Pleadings__.

Although Roulhac has filed what the Court construes to be an amended complaint, it does not supersede the original pleading given that Rouhlac makes

specific reference to it in his amended complaint.[3] Accordingly, the following factual allegations are taken from each of Roulhac's pleadings.

Roulhac complains primarily about the medical treatment that he received while imprisoned at MCF Michigan. According to Roulhac, he has been imprisoned in Pennsylvania since November 2000. While detained at SCI Huntingdon "he has been [a] chronic clinic patient." Roulhac, though, does not provide any further explanation other than to allege that he underwent two major operations at SCI Huntingdon. At some point, while Roulhac was still at SCI Huntingdon, he claims that Beard and McNaughton publicly released plans to send certain Pennsylvania prisoners to Michigan and Virginia due to budget constraints. In addition, Beard and McNaughton "assured that no medically problemed [sic], nor litigating prisoners would be transferred." Lawler, Showalter, Shoaf, Johnson, and Fisher are alleged to have further assured Roulhac that he would not be transferred due to his medical condition.

In March 2010, however, Johnson supposedly informed Roulhac that he was in fact being transferred to MCF Michigan. According to Roulhac, Beard and

---

[3]     *See West Run Student Housing Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996))("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'").

McNaughton were responsible for placing him on the transfer list. That same month, Rouhlac was purportedly transferred to MCF Michigan.

While imprisoned at MCF Michigan, Roulhac claims that his health worsened and his well-being was neglected "in deliberate indifference and supervisory liability, as the prison's budget was not fit to treat or properly diagnose prisoners with serious medical problems." Moreover, Roulhac alleges that MCF Michigan neither had an infirmary nor medical staff at the prison during the night. In this respect, Roulhac specifically pleads that on one occasion he was in severe pain, and he reported it to the MCF Michigan Defendants.[4] The next morning, around 4:00 a.m., Roulhac claims that he began vomiting blood and eventually fainted. Consequently, Roulhac was purportedly taken to Hackley where he received several operations, his stomach was pumped, and he received a blood transfusion. Doctors at Hackley allegedly diagnosed Roulhac with having stomach ulcers.

A couple of months later, Roulhac claims that he also began experiencing leg spasms and severe stress while at MCF Michigan. As a result, Roulhac was provided with medication, given shots, and was told that he should rest. At one point, he was allegedly taken back to Hackley, but nothing was done because he

---

[4]     In a roundabout manner, Roulhac specifically alleges that he made these complaints around 11:00 p.m., despite the fact that he previously alleged that MCF Michigan had no medical staff after 8:00 p.m.

lacked certain, unspecified, paperwork. Then, while on bed rest, Roulhac was diagnosed with lesions, which he believes, was caused by his leg being drained by the medical personnel at MCF Michigan.

To this day, Rouhlac purportedly suffers from pain and swelling in his leg. He also claims that he has acquired atrophy, suffers from liver damage, suffers from nightmares, and has a fear of losing his legs. Nevertheless, while imprisoned at MCF Michigan, Roulhac further alleges that he was taken "back and forth" to Hackley for different surgeries.

In September 2010, Roulhac was transferred back to the Commonwealth of Pennsylvania where he is currently imprisoned at SCI Graterford. Upon his return to Pennsylvania, Roulac alleges that he had to undergo a series of additional operations and treatments from an outside hospital "due to the poor treatment [he] received" at MCF Michigan; treatment that he claims was authorized by the DOC.

Based on these allegations, Roulhac claims that the defendants, including Hackley, were deliberately indifferent to his medical conditions in that he was mistreated "simply to stall time [before sending] him back to Pennsylvania." In addition, Roulhac claims that he was treated differently from other prisoners who had medical needs, because of his limited stay at MCF Michigan. And, Roulhac asserts that Hackley had an agreement with MCF Michigan to engage in a

conspiracy by "delay[ing] and giv[ing] the least care so that [no money would be spent]…." As such, Roulhac reasserts his claims under the Eighth and Fourteenth Amendments.[5] For exhaustion purposes, Roulhac further claims to have filed the proper grievances in both Michigan and Pennsylvania . He now brings this § 1983 action seeking to recover compensatory and punitive damages.

## III. <u>Legal Standards.</u>

### A. Rule 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of a court to address the merits of the plaintiff's suit. Fed.R.Civ.P. 12(b)(1). When considering a challenge to the Court's subject matter jurisdiction pursuant to Rule 12(b)(1), no presumption of truthfulness attaches to the plaintiff's allegations, *see Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977), and the Court may go beyond the four corners of the complaint and make factual findings which are

---

[5]     In his amended complaint, Roulhac makes no reference to his Fifth Amendment claim and appears to have abandoned it. Regardless, the Fifth Amendment only applies to actions of (or by) the Federal Government. *Colon-Martinez v. Pennsylvania Healthcare Service Staffs*, No. 13-2040, 2013 WL 3481811, at *2 (3d Cir. June 27, 2013)(citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (2005)); *see also Rauso v. Zimmerman*, No. 3:97-CV-1841, 2006 WL 3717785, at *1 n. 7 (M.D. Pa. Dec. 14, 2006). Roulhac has not alleged that Hackley, or any defendant for that matter, was acting pursuant to federal authority. Accordingly, as Judge Carlson already recommended, Roulhac's Fifth Amendment claim should be dismissed.

decisive to the issue, relying on evidence such as affidavits, depositions and other testimony. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990). Federal courts are courts of limited subject matter jurisdiction; accordingly, every case begins with the presumption that the court lacks the jurisdiction to hear it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff, therefore, bears the burden of persuading the court that it has subject matter jurisdiction over the claims. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Kligman v. I.R.S.*, 272 F. App'x 166, 168 (3d Cir. 2008).

**B. Rule 12(b)(2).**

Rule 12(b)(2) provides for dismissal for lack of personal jurisdiction. Once a defendant has raised lack of personal jurisdiction as a defense, the burden to prove that jurisdiction exists in the forum state lies with the plaintiff; a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002). A plaintiff, however, must show "with reasonable particularity" enough contact between the defendant and the forum as to support a *prima facie* case in favor of the exercise of personal jurisdiction by the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1986); *Mellon Bank v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992). A Rule 12(b)(2) motion, therefore, "requires resolution of factual

issues outside the pleadings, i.e., whether *in personam* jurisdiction actually lies." *Clark v. Matsushita Elec. Indus. Co ., Ltd.,* 811 F.Supp. 1061, 1064 (M.D. Pa. 1993) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir. 1984)).

### C. Rule 12(b)(6).

Rule 12(b)(6) provides for the dismissal of complaints that fail to state claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In considering a dismissal motion filed pursuant to Rule 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). This inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Additionally, "[*p*]*ro se* complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Jackson v. Div. of Dev. Disabilities*, 394 F. App'x 950, 951 n. 3 (3d Cir. 2010) (nonprecedential)

(quoted case omitted).  Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted).  *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Dismissal without leave to amend, however, is justified on grounds of bad faith, undue delay, prejudice, or futility.  *Alston*, 363 F.3d at 235–36.

## IV.  Discussion.

### A. The Civil Rights Statute, 42 U.S.C. § 1983.

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*  Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Kopec v. Tate*, 361 F.3d 772,

775–76 (3d Cir. 2004). To establish a claim under § 1983, a plaintiff must show the deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). Where a claim invoking federal question jurisdiction, such as a claim under § 1983, is not colorable, it may be dismissed for want of subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n. 10 (2006); *see also*, *Turner v. Spaley*, 501 F. App'x 101 (3d Cir. 2012)(per curiam)(affirming the District Court's conclusion that plaintiff's civil rights complaint failed to establish subject matter jurisdiction by not demonstrating, among other things, that the defendant was a state actor).

In the action *sub judice*, Roulhac raises an Eighth Amendment claim asserting that Hackley acted with deliberate indifference to his medical needs. He also claims that Hackley conspired with MCF Michigan and the DOC "to delay and give the least care [sic]," until he was transferred back to Pennsylvania. I will assess these claims *seriatim*, through the lens of the various legal standards for motions to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## B. The State Action Requirement.[6]

As mentioned, to sufficiently plead a claim under § 1983, a plaintiff must allege the deprivation of a right secured by the Constitution and the laws of the United States by a person acting under color of state law. *Kneipp*, 95 F.3d at 1204 (citation and quotations omitted). To determine whether a person acts under color of state law, it is important to understand and appreciate the language contained in the Fourteenth Amendment.

In pertinent part, the Fourteenth Amendment provides that "*[n]o State* shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV, § 1(emphasis added). By its express terms, the Fourteenth Amendment governs only state conduct, not that of private citizens. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982). Accordingly, in identifying the similar language contained in § 1983, the Third Circuit has determined that the "under color of law" phrase contained in the Civil Rights Statute is to be identically interpreted as the "[n]o state shall" language in the Fourteenth Amendment. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005); *see also Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In other words, "Section 1983 subjects to liability those who deprive persons of federal constitutional or

---

[6] While this motion requests dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), I will focus on the former here, as it comprises the thrust of this portion of Hackley's motion. Accordingly, I will apply the Rule 12(b)(1) legal standard and consider evidence outside of the pleadings.

statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko*, 424 F.3d at 339 (citation omitted).

While apparently clear, there is no "simple line" between state and private actors, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Since there is no "simple line" between the two types of persons, the courts have had to fashion legal rules drawing on Supreme Court jurisprudence. In doing so, the Third Circuit has explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, the Third Circuit has further outlined three broad tests: (1) the Public Function Test - "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) the Close Nexus Test - "whether the private party has acted with the help of or in concert with state officials"; and (3) the Symbiotic Relationship Test - whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). A plaintiff need only make a showing of state action under any one of the three tests to demonstrate that his or her violation was caused by a person acting under color

of state law, and"[these] inquir[ies] [are] fact-specific." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (1995); *see also Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 234 (2002) (en banc) (noting that "the facts are crucial").

Here, it is unnecessary to dwell on each of these tests. Roulhac has simply failed to meet his burden under the Rule 12(b)(1) legal standard by failing to show that Hackley is a state actor. Moreover, Hackley has provided an affidavit, affirming that: (1) Hackley is a privately owned entity that does not engage in activities on behalf of Michigan or Pennsylvania; (2) Hackley is not assigned to MCF Michigan; and (3) Hackley is not, and was not, under a contract with either the DOC, MCF Michigan, or any other prison. *Doc.* 47-6 at ¶¶ 4, 8-10. Based on this affidavit, coupled with Roulhac's pleadings, the only reasonable inference that can be made is that Hackley happened to be a hospital that was in close proximity to MCF Michigan and used to provide an additional level of medical care beyond that which the prison could not itself provide. But, that is not to say that Hackley assumed the affirmative duty of MCF Michigan to provide the level of medical care required under the Eighth Amendment or that the state prison relied upon the private hospital for purposes of generating revenue or acted on the state's behalf through the execution of a contract. Accordingly, Roulhac's § 1983 claims against the hospital should be dismissed with prejudice.

14

### C. Roulhac's Constitutional Claims.

Here, even though further analysis is not required as all other defenses and objections have become moot, I will proceed to address the merits of Roulhac's civil conspiracy and Eighth Amendment claims through the lens of Rule 12(b)(6).

### 1. Roulhac's Eighth Amendment Claim.

To establish an Eighth Amendment[7] medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden City. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known. See *Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v.*

---

[7] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. Amend. VIII.

*Brennan*, 511 U.S. 825, 837 (1994). "If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Deliberate indifference, however, can be established by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291.

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Likewise, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle*, 429 U.S. at 106. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish

deliberate indifference. *See Spruill*, 372 F.3d at 235; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

In this case, Roulhac does precisely what the *Spruill* and *Durmer* Courts counseled against when raising an Eighth Amendment medical care claim. Roulhac does not allege that Hackley delayed treatment or that it failed to treat him altogether, in deliberate indifference to his medical condition. Instead, Roulhac's pleadings are focused on his disagreement with the level of care that he actually received, which he believes to have been the "least care" and "[not] adequate." *Doc.* 45 at 5. Roulhac avers, however, that he underwent "several" surgical procedures at Hackley, his stomach was pumped there, and he received a blood transfusion. *Id.* at 2. In addition, Roulhac avers that he was taken "back and forth" to Hackley for "different surgeries" (*Doc.* 1 at 9). As such, Rouhlac's Eighth Amendment medical care claim should be dismissed for his failure to state a claim upon which relief can be granted.

## 2. Roulhac's Civil Conspiracy Claim.

Rouhlac's sole remaining claim against Hackley involves his allegation that the hospital engaged in a conspiracy with MCF Michigan and the DOC to "give the least medical care so that [it] would not spend money, and not give adequate reasonable medical care," while waiting for him to be transferred back to a

Pennsylvania state prison. *Docs.* 1 at 9 & 45 at 5, 6. Generally, to raise a civil conspiracy claim under § 1983, the "plaintiff must [allege] that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, No. 13–1283, 2013 WL 2636643, *3 (3d Cir. June 13, 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, to assert a conspiracy under § 1983, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974).

In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dist.*, Civ. No. 12–CV–2074, 2013 WL 4718920, *8 (M.D. Pa. Sept.3, 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa.Super.Ct. 2008). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)). In other words, Roulhac must allege "some factual basis to support the existence of the elements of a conspiracy," namely the existence of an agreement and concerted action. *Id.* (citing Capogrosso, 588 F.3d at

184); *Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. *Savage*, 644 F.Supp.2d at 561.

Here, while Roulhac alleges that Hackley acted under an agreement with MCF Michigan and the DOC to deprive him of medical care, Roulhac simply fails to provide a factual basis to support the existence of any such agreement or that overt action was taken in furtherance of any agreement. Moreover, given that I have already determined that Roulhac fails to plead a proper Eighth Amendment claim, he fails to properly allege the existence of any legal damages. At most, Roulhac has shown conscious parallelism, which is insufficient for purposes of raising a civil conspiracy claim. Roulhac's civil conspiracy claim should, therefore, be dismissed.

### D. Personal Jurisdiction.

Even though a finding that the Court lacks subject matter jurisdiction renders all other defenses and objections moot, I also proceed to make a recommendation on this next portion of Hackley's dismissal motion, involving the Court's personal jurisdiction. In so ruling, I choose to adhere to the sound and thorough reasoning

set-forth by Magistrate Judge Carlson when he first addressed this specific issue on May 2, 2013. *Doc.* 35 at 6-15. Roulhac has offered nothing of value to change the decision rendered by Judge Carlson. As such, I fully incorporate that portion of Judge Carlson's Report and Recommendation, and I recommend that the Court rules accordingly by granting Hackley's motion to dismiss for want of personal jurisdiction under Fed.R.Civ.P. 12(b)(2).

## V.    <u>Leave to Amend.</u>

In general, *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Fletcher–Harlee Corp.*, 482 F.3d at 252 (3d Cir. 2007). Leave to amend need not be granted to *pro se* litigants, however, if amendment would be futile. *Grayson* 293 F.3d at 106. In the instant matter, Judge Carlson already provided Roulhac with an opportunity to file a curative amended pleading. Rather than curing the deficiencies explained by Judge Carlson, Roulhac filed more of the same, and he filed his amended pleading past the deadline set by the Court. Having reviewed his pleadings against the backdrop of Hackley's second dismissal motion, and the relevant legal standards, Roulhac has added nothing of substance or value to his claims against the privately owned hospital. Roulhac's claims against Hackley should, therefore, be dismissed without granting him leave to amend, because

leave to amend would be futile and potentially result in undue prejudice to Hackley.

## VI.  Recommendation.

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Roulhac's complaint (*Doc.* 1) and amended complaint (*Doc.* 45) be **DISMISSED** with prejudice against Hackley;

(2) Hackley's motion to dismiss (*Doc.* 47) be **GRANTED**; and

(3) The case be **REMANDED** to the undersigned for further pre-trial management on Roulhac's claims against the remaining defendants.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to

the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **13th** day of **January, 2014**.

> ***S/ Susan E. Schwab***
> Susan E. Schwab
> United States Magistrate Judge