# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL KHALIFAH ROULHAC, | : | CIVIL NO. 1:12-CV-00311 |
| | : | |
| Plaintiff, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | |
| R.M. LAWLER, *et. al*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

The *pro se* plaintiff, Paul Roulhac ("Roulhac"), a prisoner at SCI Graterford, brings this civil action pursuant to 42 U.S.C. § 1983 for alleged constitutional violations arising out of his transfer to a state prison in Michigan and the level of medical care he received there.  Pending before me are two dispositive motions, a motion to dismiss and a second motion to dismiss framed alternatively as a motion for summary judgment. For the following reasons, I recommend that the motions be granted, and Roulhac's pleadings be dismissed without leave to amend.

## I.   Background and Procedural History.

On February 16, 2012, Roulhac initiated this action by filing a civil rights complaint against the following 11 defendants: (1) R.M. Lawler, the Superintendent at SCI Huntingdon; (2) Mary Lou Showalter, the health care administrator at SCI Huntingdon; (3) FNU Shoaf, a medical doctor at SCI

Huntingdon;[1] (4) FNU Fisher, a counselor at SCI Huntingdon; (5) FNU Johnson, the FA-Block Counselor at SCI Huntingdon; (6) Jeffery Beard ("Beard"), the Secretary Commissioner for the Pennsylvania Department of Corrections ("DOC"); (7) Susan McNaughton, the DOC Press Secretary; (8) Michael Curley, the Superintendent at the Muskegon Correctional Facility in Michigan ("MCF Michigan"); (9) FNU Bergman, a doctor at MCF;[2] (10) John Does, "medical staff at MCF"[3]; and (11) Hackley Lakeshore Hospital ("Hackley"). *Doc.* 1 at 5-6.[4]

Along with his complaint, Roulhac filed a motion to proceed *in forma pauperis,*

---

[1]     Shoaf, who has not filed a dismissal motion, is not an employee of the Commonwealth and is proceeding *pro se.* Nevertheless, Roulhac's claims against Shoaf may be screened pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which applies the same Rule 12(b)(6) legal standard, *infra. See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008)("[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions.")(citing *Allah v. Seiverling*, 229 F.3d 220, 223 (2000)).

[2]     It does not appear that Bergman was ever served when the Court initially ordered that Process should be issued. *See Doc.* 13 at 1. Nevertheless, like Shoaf, the claims against Bergman may be screened pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii).

[3]     Since the filing of Roulhac's amended complaint, more than 120 days has lapsed and he has neither identified the John Doe defendants in order to effectuate service pursuant to Rule 4 of the Federal Rules of Civil Procedure, nor has he shown good cause as to why these John Doe defendants should not be dismissed. Accordingly, all of Roulhac's claims against these defendants should be dismissed. Regardless, even if these defendants were not dismissed for Roulhac's failure to identify them, Roulhac's legal claims against the John Does are deficient.

[4]     Collectively, the following defendants will be referred to as the "Commonwealth Defendants": Lawler, Showalter, Johnson, Fisher, Beard, and McNaughton.

which was granted by the Court. *See Doc.* 10. Generally, in his complaint, Rouhlac alleges that all of the defendants, in their individual capacities, "acted in supervisory liability and deliberate indifference," under the color of law, to violate his rights guaranteed under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Upon being served with the complaint, the Commonwealth Defendants and Curley filed motions to dismiss. *Docs.* 19, 20, & 25. On May 2, 2013, Chief Magistrate Judge Carlson considered the defendants' motions and recommended that they be granted. *Doc.* 35. In issuing his Report and Recommendation, Judge Carlson determined that the Court lacked personal jurisdiction over Hackley and that Roulhac failed to state a claim against the Commonwealth and Michigan Defendants. Judge Carlson further recommended that Roulhac be given leave to amend. On June 3, 2013, the Court adopted Judge Carlson's Report and Recommendation in its entirety, and gave Roulhac until June 28, 2013, to file an amended complaint. *Doc.* 38.

On July 3, 2013, after Roulhac's deadline to file an amended complaint had expired, Judge Carlson issued a second Report and Recommendation wherein he recommended that the complaint be dismissed with prejudice. *Doc.* 42. Subsequently, on July 19, 2013, within the time permitted for objections, Roulhac filed a single document consisting of objections to the second Report and

3

Recommendation, as well as an amended complaint. *Doc.* 45. As a result, the Court declined to adopt Judge Carlson's second Report and Recommendation, and the case was remanded to the undersigned. *Docs.* 46 & 52.

Although Roulhac has filed what the Court construes to be an amended complaint, it does not necessarily supersede the original. This is especially true whereas here Roulhac makes specific reference to his initial complaint in the amended pleading. *See West Run Student Housing Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013)("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'")(quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)). In addition, the defendants have so construed Rouhlac's pleadings, as a precaution, in filing the motions pending review. Accordingly, the following factual allegations are taken from Roulhac's initial and amended complaints (i.e. the "pleadings").

In his pleadings, Roulhac maintains that he is a Pennsylvania state prisoner and has been one since November 2000. Roulhac further provides that, as a prisoner, he "has been [a] chronic clinic patient" and undergone three "major operations."

At some point, while Roulhac was housed at SCI Huntingdon, Beard and McNaughton publicly released plans to send certain Pennsylvania prisoners to Michigan and Virginia due to budget constraints.   In addition, Beard and McNaughton "assured [the public and concerned persons] that no medically problemed [sic], nor litigating prisoners would be transferred…." Lawler, Showalter, Shoaf, Johnson, and Fisher also assured Roulhac that he would not be transferred due to his "medical condition."

In March 2010, despite the aforementioned assurances, Johnson informed Roulhac that his name was on the list to be transferred to MCF Michigan, and before the month ended, Rouhlac was transferred to said facility.   Prior to the transfer, however, Roulhac "and other medically problemed [sic] prisoners expressed concerns to" Lawler, Showalter, Shoaf, Johnson, and Fisher.   Those defendants, according to Roulhac, knew about his "medical condition, or should have known, and refused to stop the transfer."   Nevertheless, said defendants placed the blame on Beard and McNaughton.

While imprisoned at MCF Michigan, Roulhac claims that his health worsened and his well-being was neglected "in deliberate indifference and supervisory liability, as the prison's budget was not fit to treat or properly diagnose prisoners with serious medical problems."   In particular, Rouhlac complains that MCF Michigan lacked an infirmary and no medical staff remained on duty past

8:30 p.m.  Additionally, Roulhac alleges that he complained to the MCF Michigan "medical and administrative staff" about his medical needs.  Roulhac further avers that he was "taken back and forth" to an outside hospital for "different surgeries."

On at least one occasion, Roulhac complains that he informed the MCF Michigan defendants that he was in severe pain.  This allegedly occurred around 11:00 p.m.  Later that same night, around 4:00 a.m., Roulhac claims that he began vomiting blood, had diarrhea, and eventually fainted.  Consequently, Roulhac was taken to Hackley where he received several operations (one for his throat and one for his liver), his stomach was pumped, and he received a blood transfusion.  Doctors at Hackley diagnosed Roulhac with having stomach ulcers.

In addition to being taken to Hackley, Roulhac was treated at MCF Michigan for pain in his legs.  In particular, he received injections, medication, and he was given bed rest.  Four days after he complained about his legs, when the prescribed treatments did not work, Roulhac was again taken to an outside hospital.  On this occasion, however, the hospital informed Roulhac that it would take a while to obtain the paperwork in order to correct the problem.  Consequently, Roulhac was taken back to MCF Michigan.  Back at MCF Michigan, Roulhac was informed that his leg was bleeding on the inside and he was told to stay off of it.  As a result, Roulhac was confined to his prison cell.  Furthermore, the prison hospital at MCF Michigan eventually "drained" Roulhac's

legs.  Nevertheless, Roulhac claims that he formed lesions, his pain grew worse, and he began having psychological problems.  To this day, Rouhlac purportedly suffers from pain and swelling in his leg.  He also claims that he has acquired atrophy, suffers from liver damage, suffers from nightmares, and has a fear of losing his legs.

After several months at MCF Michigan, the Pennsylvania DOC made plans to transfer Roulhac back to a prison in Pennsylvania.  Accordingly, in September 2010, Roulhac was returned to Pennsylvania where he underwent "a series of operations and treatments" at SCI Albion and an outside hospital.  Roulhac now brings this action pursuant to 42 U.S.C. § 1983, seeking damages for alleged violations of the First, Fifth, Eighth, and Fourteenth Amendments.

On August 29, 2013, after Roulhac had filed his amended complaint, Hackley filed a motion to dismiss pursuant to Rules 12(b)(1), (b)(2), and (b)(6) of the Federal Rules of Civil Procedure.  *Doc.* 47.  When the motion became ripe for review, I recommended that Hackley's motion be granted and Roulhac's claims against it be dismissed with prejudice.  *Doc.* 67.  On March 11, 2014, the Court adopted my Report and Recommendation, remanded the case back to me for further pre-trial management, and also denied Roulhac's motion for reconsideration.  *Docs.* 75, 77 & 79.

7

Pending before me now are two additional dispositive motions.  The first motion, filed by the Commonwealth Defendants, seeks dismissal of Roulhac's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Doc.* 54.  The second motion, filed by Curley, seeks dismissal of Roulhac's amended complaint pursuant to Rule 12(b)(6), or alternatively, the entry of summary judgment pursuant to Rule 56.  *Doc.* 61.  In Curley's motion, he refers to several previously filed exhibits, *see generally Doc.* 22, including: (1) his own affidavit; (2) an affidavit from Richard Russell, the manager of the grievance section with the Michigan Department of Corrections; (3) a copy of the Michigan Department of Corrections' grievance policy; and (4) a "Step III" grievance report on Roulhac.  With respect to both motions, Roulhac has filed a brief in opposition. Furthermore, in responding to Curley's motion, Roulhac filed exhibits of his own, including grievances that he had filed while imprisoned in Pennsylvania and at MCF Michigan.  *See generally, Doc.* 68 at 8-15.   The motions, having been fully briefed, are ripe for disposition on the merits.[5]

---

[5]     In his supporting brief, counsel for Curley misidentifies Chief Magistrate Judge Carlson as "Magistrate Carlson." *Doc.* 63 at 6. The title magistrate no longer exists in the United States Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub.L. No. 101–650, § 321 (1990) ("After the enactment of this Act, each United States magistrate ... shall be known as a United States magistrate judge."). Counsel is reminded to use the correct title, in the future, when referring to magistrate judges.

## II.    <u>Legal Standard.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that a claim is facially plausible so as to permit a District Court to draw the reasonable inference that a defendant is liable for the alleged misconduct. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In other words, a plaintiff must plead more than the mere possibility of relief to survive a motion to dismiss. To accomplish this task, and avoid dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."); *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). Following *Iqbal* and *Twombly*, a plaintiff must now show that the allegations of his or her complaint are plausible. *Iqbal*, 556 U.S. at 677-78; *Fowler*, 578 F.3d at 211 ("A complaint has to 'show' entitlement with its facts.")(citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).

With respect to the role of a District Court placed in the position of reviewing a plaintiff's complaint in connection with the Rule 12(b)(6) pleading standard, it must conduct a two-part analysis. *Fowler*, 578 F.3d at 210. First, the factual and legal elements of a claim should be separated. *Id.* The District Court must accept all of the plaintiff's well-pleaded facts as true, but shall disregard any legal conclusions. *Id.* (citing *Iqbal*, 556 U.S. at 678); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *Baraka*, 481 F.3d at 195. Second, a District Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 210 (citing *Iqbal*, 556 U.S. at 678). "This 'plausibility' determination will be a 'context-specific task that requires the [District Court] to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Additionally, in a case such as this, a complaint filed by a *pro se* litigant is to be liberally construed and held to a less stringent standard than formal complaints drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 10-4710, 2013 WL 57895 at *4 (3d Cir. Jan. 7, 2013).

10

## III.   **Discussion.**

Applying the aforementioned legal standard, I will first address Roulhac's claims against Shoaf and the Commonwealth Defendants for purposes of clarity and convenience. Where the claims overlap with Roulhac's claims against Curley, Bergman, and the John Does, I will note it accordingly. Moreover, as stated, Roulhac brings this action, against all of the defendants pursuant to 42 U.S.C. § 1983. Rather than repeating it, § 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). To establish a claim under this section, a plaintiff must show that (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  As the Third Circuit has explained: "[t]he first

11

step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013)(*en banc*)(internal quotations and quoted case omitted).

Here, none of the moving defendants dispute that they were acting "under color of state law" and there similarly appears to be no such issue as to the defendants that have neither been served nor filed a dispositive motion. Thus, after identifying the contours of his claims, whether they (i.e. the claims) survive depends upon whether Roulhac has sufficiently pled facts to plausibly show the existence of a constitutional violation.

### A. Roulhac's claims against Shoaf and the Commonwealth Defendants.

### 1. The First Amendment.

The Commonwealth Defendants do not challenge Roulhac's assertion in his initial pleading (*Doc.* 1 at 5) that his First Amendment rights were violated. Moreover, Shoaf has not filed a dismissal motion. Nevertheless, pursuant to the "screening" provision imbedded within the *in forma pauperis* statute – 28 U.S.C. § 1915– I find that Roulhac fails to state a claim upon which relief can be granted.[6]

---

[6]     After evaluating a litigant's financial status and determining whether (s)he is eligible to proceed *in forma pauperis*, *Roman v. Jeffes*, 904 F.2d 192, 194 n. 1 (3d Cir. 1990), the Court has an on-going statutory obligation to review complaints

Other than citing to the First Amendment in his initial pleading, Roulhac fails to provide any factual allegations plausibly showing that his freedom of speech, the press, religion, the right to peaceably assemble, or the right to petition for a redress of his grievances was violated by either Shoaf or the Commonwealth Defendants.   Moreover, to the extent that Roulhac intends on raising a First Amendment retaliation claim, he similarly fails to provide sufficient allegations to state a claim for relief.

To properly raise a First Amendment retaliation claim, a prisoner-plaintiff must show that (1) he engaged in constitutionally protected conduct, (2) prison officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000); and (3) the "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to discipline" the inmate. *Rauser v. Horn*, 241 F.3d 330, 333–334 (3d Cir. 2001) (quoting *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Ambrose v. Twp. of Robinson*, 303

---

brought by plaintiffs given leave to proceed *in forma pauperis*.   Specifically, the Court "shall dismiss the complaint at any time if [it is determined] that ... the action ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Given that the language under the statute is similar to the language set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure - providing for the dismissal of complaints that fail to state a claim upon which relief may be granted - the same legal standard is to apply when reviewing claims brought by a plaintiff proceeding *in forma pauperis*. *See Courteau*, *supra*, 287 F. App'x at 162.

F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him"). In this case, Roulhac provides no factual allegations showing the existence of any of these elements. Consequently, any First Amendment claim that Roulhac is attempting to raise, to the extent this claim was not otherwise abandoned, should be dismissed.[7]

### 2. The Fifth Amendment.

In his pleadings, Roulhac cites to, and asserts, that his Fifth Amendment due process rights were violated by the defendants. *Doc.* 1 at 5, 10; *Doc.* 45 at 6. Roulhac changes course, however, in his brief-in-opposition to the Commonwealth Defendants' motion, contending that he never raised claims pursuant to the Fifth Amendment. *Doc.* 59 at 1. Regardless, the Fifth Amendment only applies to actions of (or by) the *Federal* Government. *Colon-Martinez v. Pennsylvania Healthcare Service Staffs*, No. 13-2040, 2013 WL 3481811, at *2 (3d Cir. June 27, 2013)(citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (2005)); *see also Rauso v. Zimmerman*, No. 3:97-CV-1841, 2006 WL 3717785, at *1 n. 7 (M.D. Pa. Dec. 14, 2006). In this case, Roulhac has raised claims solely against state actors and has not otherwise alleged that any of the defendants were acting pursuant to federal authority. Furthermore, in his pleadings Roulhac never alleges

---

[7]     This recommendation applies with equal force to Bergman, Curley, and the John Does.

that any defendant was acting pursuant to said federal authority; therefore, the Fifth Amendment is clearly inapplicable, and any existing Fifth Amendment claims should either be deemed abandoned by Roulhac or dismissed for failure to state a claim.[8]

### 3. The Eighth Amendment.

In this instance, Roulhac's claim against Shoaf and the Commonwealth Defendants is not entirely clear.  I have liberally construed his pleadings, however, to include two claims pursuant to the Eighth Amendment: (1) that his transfer from SCI Huntingdon to MCF Michigan "amounted to … cruel and unusual punishment" because he was not given a hearing or an opportunity to be heard (i.e. due process) and (2) that these defendants acted with deliberate indifference to his medical needs because they transferred him to MCF Michigan when they knew about, or were aware of, his medical condition.

The Eighth Amendment provides, in part, that cruel and unusual punishment shall not be inflicted.   U.S. CONST. Amend. VIII. As Judge Carlson already recommended, *see Doc.* 35 at 19, the first Eighth Amendment claim raised by Roulhac should fail.  With respect to Roulhac's first Eighth Amendment claim, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment.  *See, e.g., Hassain v. Johnson*, 790 F.2d

---

[8]     This recommendation applies with equal force to Bergman, Curley, and the John Does.

1420 (9th Cir. 1986); *Serrano v. Torres*, 764 F.2d 47 (1st Cir. 1985).  In addition, as discussed in more detail *infra*, no process was due Roulhac prior to his transfer to MCF Michigan, because he was not deprived of any liberty interest. Furthermore, Roulhac does not provide in his pleadings that his transfer to MCF Michigan imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," wherefore process would have been due.  *Sandin v. Conner*, 515 U.S. 472, 483 (1995).  Accordingly, since Roulhac was not deprived of a liberty interest, or otherwise deprived of procedural due process in violation of the Constitution, it cannot be said that his Eighth Amendment rights were violated when he was transferred to MCF Michigan; therefore, Roulhac's first Eighth Amendment claim against Shoaf and the Commonwealth Defendants should be dismissed.

With respect to Roulhac's second Eighth Amendment claim against Shoaf and the Commonwealth Defendants, the Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of the right to adequate medical care, under 42 U.S.C. § 1983, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  *See Spruill v. Gillis*,

372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).   In order to satisfy this test, an inmate must allege a serious medical need and a prison official's deliberate indifference to that need.  *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoted case omitted).  A serious medical need may also be established if the denial or delay of medical care results in the unnecessary and wanton infliction of pain, a lifelong handicap, or permanent loss.  *Id.*

To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety.   *See Farmer*, 511 U.S. at 837-38.  Without the requisite *scienter*, a prison official's conduct alone will not constitute deliberate indifference.  *Id.* Deliberate indifference does not require an express intent to cause harm, but it does require more than mere negligence.  *Id.* at 835-86.  Accordingly, in the context of prison medical care, the Eighth Amendment can be violated by the deliberate indifference of: (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment

once it is prescribed.  *Estelle*, 429 U.S. at 104-105; *see Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (identifying scenarios that satisfy *Estelle*).

However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.  If a prisoner is under the care of medical experts, a non-medical prison official cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner...." *Spruill*, 372 F.3d at 236; *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  This is true because "[h]olding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain [the prison's] division of labor." *Id.*  In addition, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)(internal quotations omitted).  In this regard, claims of negligence or medical malpractice do not constitute deliberate indifference.  *Singletary v. Pa Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001).

Here, Roulhac contends that Shoaf and the Commonwealth Defendants acted with deliberate indifference to his medical needs because they transferred him to MCF Michigan when they knew about, or were aware of, his medical condition.  Other than providing that he was a "chronic clinic patient," however, nowhere in his pleadings does Roulhac set-forth what his condition was *prior* to the time that he was transferred.[9]  In addition, noticeably missing from Roulhac's pleadings are sufficient allegations that at the time he was transferred to MCF Michigan these defendants knew Roulhac would sustain an injury, exacerbating his existing medical condition, whatever it was, or that MCF Michigan was somehow ill-equipped to treat any of his purported conditions.  *See McKeither v. Folino*, 540 F. App'x 76, 79 n. 5 (3d Cir. 2013)(noting plaintiff's failure to allege the same).  Roulhac, instead, conclusively avers that these defendants knew or should have known that MCF Michigan could not properly treat him.  *Doc.* 1 at 10; *see also Doc.* 45 at 4, 6.  As well, Roulhac fails to demonstrate that these defendants had any ability to intervene with the transfer decision, much less, that they were responsible for his name being placed on the list of inmates to be transferred in the first place.  As a result, Roulhac's second Eighth Amendment claim should also be dismissed, because he fails to plausibly demonstrate that Shoaf and the

---

[9]     Roulhac does provide that he had three operations within the 10 years before he was transferred to MCF Michigan, but he fails to explain what those operations were for or whether those particular health problems were resolved.

Commonwealth Defendants acted with deliberate indifference to his medical needs.

### 4. The Fourteenth Amendment.

Next, Roulhac claims that Shoaf and the Commonwealth Defendants violated his Fourteenth Amendment procedural due process rights when he was transferred from SCI Huntingdon to MCF Michigan. More precisely, Roulhac contends that he did not receive process (i.e. a fair hearing and an opportunity to be heard) even though his transfer was allegedly in violation of the DOC's policy providing that only inmates free of serious medical issues would be transferred. *See Doc.* 59 at 1-2. Roulhac also appears to raise an equal protection claim against these defendants for having him transferred out of state while other prisoners with medical problems were not.

### a. Procedural Due Process.

In relevant part, the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. "Process[, however,] is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (citation omitted). In other words, there is no deprivation of due process in

the absence of a protected interest.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

With respect to Roulhac's claim, it is well-established that inmates generally have no constitutionally protected liberty interest to placement in any particular prison, to any security classification, or to any particular housing assignment.[10] *See Olim*, 461 U.S. at 245-48; *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995); *Machesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976).  Since Roulhac had no liberty interest at stake in the prison of his choice, he fails to state a claim for a violation of his right to procedural due process; furthermore, Roulhac has not sufficiently alleged that his transfer to MCF Michigan otherwise violated the Constitution.  *See Sandin*, *supra*, 515 U.S. at 483.  "Moreover, despite [Roulhac's] argument to the contrary, the fact that his transfer was allegedly in violation of [a purported] DOC policy providing that only inmates free of serious medical issues would be transferred, deviation from [said] policy does not show a violation of due process."  *McKeither v. Folino*, 540 F. App'x 76, 78 (3d Cir. 2013)(per curiam)(citing *Griffin v. Vaughn*, 112 F.3d 703, 709 n. 3 (3d Cir. 1997)).  Thus, Roulhac has no justiciable claim that

---

[10]    While a plaintiff can establish a constitutionally protected right in a livelihood, liberty, or property interest, it is obvious that Roulhac's claim is concerned solely with the deprivation of a liberty interest; thus, I focus only on this alleged deprivation.

his due process rights were violated simply because he was transferred to MCF Michigan.  *See Mckeither*, 540 F. App'x at 78.  As such, Roulhac's Fourteenth Amendment procedural due process claim should be dismissed against Shoaf and the Commonwealth Defendants.

### b. Equal Protection.

Turning to Roulhac's equal protection claim against Shoaf and the Commonwealth Defendants, the Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1.  In determining whether a plaintiff has stated an equal protection claim under the Fourteenth Amendment, the courts apply different levels of scrutiny.

With respect to the different scrutiny levels, the general rule is that a law or government action is presumed to be valid, and will be sustained, if the classification drawn by the government is rationally related to a legitimate state interest.  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). This general rule gives way, however, when a law or government action substantially burdens a fundamental constitutional right or targets a suspect class such as a member of a certain race, alienage, or national origin.  *See id.* at 440-41.  Under those circumstances, the courts apply the "strict scrutiny" analysis; that is, to survive, the law or government action must be narrowly tailored to serve a

compelling state interest.  *Cleburne*, 473 U.S. at 440; *Abdul-Akbar v. McKelvie*, 229 F.3d 307, 317 (3d Cir. 2001) (citing *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982)).  Moreover, when a law or government action targets a quasi-suspect class, such as a member of a certain gender, a heightened, or "intermediate," scrutiny is applied.  *Id.* at 440-41.  Under this heightened, or intermediate, scrutiny analysis, a law or government action will fail unless it is substantially related to a sufficiently important (or legitimate) governmental interest.   *Cleburne*, 473 U.S. at 440-41 (citations omitted).   Finally, if a law or government action neither burdens a fundamental right nor targets any of the aforementioned classes, the equal protection claim is limited to an alleged "equal protection violation against a 'class of one.'"  *Pressley v. Pennsylvania Dep't of Corr.*, 365 F. App'x 329, 331 (3d Cir. 2010).   In order to succeed on a claim based on a "class of one" theory, the plaintiff must show that he was intentionally treated differently from others similarly situated, and that there was no rational basis for the treatment.   *Pressley,* 365 F. App'x at 331 (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)).

Here, Roulhac makes no allegations plausibly showing that he is a member of either a suspect or quasi-suspect class.  Indeed, prisoners do not form a suspect class, *Abdul-Akbar*, 239 F.3d at 217, nor do persons with physical ailments or disabilities, *see Audi v. Jenkins,* No. 3:12-CV-836, 2012 WL 3011704, at *4 (M.D.

Pa. July 23, 2012)(citing *Cleburne* for the proposition that disability is not a suspect classification under the Equal Protection Clause); *see also Frontiero v. Richardson*, 411 U.S. 677, 686 (1973)(plurality opinion)(stating in *dicta* that intelligence and physical disabilities are not suspect classes). Moreover, there are no allegations demonstrating that Roulhac's transfer to MCF Michigan substantially burdened any fundamental constitutional rights.[11]   Accordingly, to survive, Roulhac must sufficiently state an equal protection claim under the "class of one" theory.

I find, however, that Roulhac's pleadings are devoid of sufficient allegations to proceed under the "class of one" theory.   While Roulhac is not attempting to simply distinguish himself from other prisoners, but rather that he was treated differently from other DOC prisoners who suffered from serious medical conditions, he fails to plausibly show that Shoaf and the Commonwealth Defendants purposefully discriminated against him.   Indeed, Roulhac's pleadings could be reasonably construed to include allegations that similarly situated prisoners were in fact transferred along with him, wholly negating his equal protection claim.   In this regard, Roulhac alleges that after Johnson notified him

---

[11]   To the extent that Roulhac might argue on objection to this Report and Recommendation that his equal protection claim includes a claim that a fundamental constitutional right was substantially burdened because he was denied procedural due process, that claim must fail because no process was due, as previously discussed.

that he was on the transfer list, Roulhac "and other medically problemed [sic] prisoners expressed concerns" to the defendants. *See Doc.* 1 at 8.

More damaging, Roulhac fails to show that the decision to transfer him to MCF Michigan lacked a rational basis. In fact, Roulhac does not attempt to address this factor. Instead, the only reasonable inference that can be made from his pleadings is that the decision to transfer him to MCF Michigan was to help alleviate budgetary constraints placed upon the DOC, which amounts to a rational basis. *See id.* Further, the Commonwealth Defendants point out in their brief-in-support that the prison transfers were actually for the purpose of alleviating overcrowding in the Pennsylvania prisons - an additional rational basis. *Doc.* 55 at 15-16. Roulhac's equal protection claim, consequently, should be dismissed.

### 5. Civil Conspiracy.

Finally, Roulhac raises a civil conspiracy claim against Shoaf and the Commonwealth Defendants. According to Roulhac, these defendants acted in a conspiracy with Curley, Bergman, and the John Does to provide him with inadequate medical care, in violation of the Eighth Amendment. In support of his conspiracy claim, Roulhac points to the agreement between the DOC and MCF Michigan which called for MCF Michigan to receive Pennsylvania prisoners due to budgetary, or overcrowding, concerns. In pointing to said agreement, Roulhac conclusively asserts that the agreement also called on the defendants in Michigan

to delay, deny, and provide the least amount of medical treatment until the Pennsylvania prisoners were returned to their home institutions.

Generally, to establish a conspiracy under 42 U.S.C. § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, No. 13–1283, 2013 WL 2636643, *3 (3d Cir. June 13, 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). Specifically, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dist.*, Civ. No. 12–cv–2074, 2013 WL 4718920, *8 (M.D. Pa. Sept.3, 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)). In other words, Roulhac must allege "some factual basis to support the existence of the elements of a conspiracy," namely the existence of an agreement and concerted

26

action. *Id.* (citing *Capogrosso*, 588 F.3d at 184); *Savage v. Judge*, 644 F.Supp.2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. *Savage*, 644 F.Supp.2d at 561.

Here, Roulhac's pleadings lack sufficient allegations plausibly showing that a conspiracy existed.   Specifically, there is nothing in Roulhac's pleadings to support his threadbare allegation that the agreement between the DOC and MCF Michigan involved something more than simply the transfer of prisoners to help alleviate budgetary or overcrowding problems.   That he may not have received the level of medical care that he, personally, desired until he was returned to Pennsylvania, may, at most, show conscious parallelism, but not *an agreement* to do harm.   In other words, there is no factual basis to support Roulhac's conspiracy claim; therefore, the conspiracy claim should be dismissed.

**B. Roulhac's claims against Bergman, Curley, and the John Does.**[12]

Of the claims not already addressed and made applicable to Bergman, Curley, and the John Does, Roulhac alleges that these defendants (1) acted with deliberate indifference to his medical needs in violation of the Eighth Amendment, (2) violated his right to equal protection pursuant to the Fourteenth Amendment, and (3) conspired with Shoaf, the Commonwealth Defendants, and Hackley to delay, deny, or provide with the least amount of, medical care in violation of the Eighth Amendment.

**1. The Eighth Amendment.**

Employing the *Estelle* standard, *supra*, Roulhac's pleadings, liberally construed, fail to state an Eighth Amendment claim for relief against Bergman, Curley, and the John Does.  In his pleadings, Roulhac does not sufficiently allege that medical care was otherwise deliberately (or intentionally) denied or delayed. While he allegedly complained to the "defendants at [MCF Michigan]" that he was in "severe pain" on the night that he later fainted, he has not plausibly shown that

---

[12]    While Curley's motion to dismiss, framed in the alternative as a motion for summary judgment, could, under the circumstances, be so converted, *see Hilferty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996), *see also Latham v. United States*, 306 F. App'x 716 (3d Cir. 2009)(per curiam)(concluding that any failure by the District Court to *explicitly* notify a *pro se* prisoner of its intent to treat a motion framed in the alternative as one for summary judgment was "harmless."), I elect not to do so in this matter because Roulhac simply fails to state a claim against Curley. Accordingly, I will analyze Roulhac's claims against Curley under the Rule 12(b)(6) legal standard.

the reason for not providing him with immediate treatment or immediately taking him to Hackley was a decision made with deliberate indifference to his medical needs.  Moreover, Roulhac otherwise attacks the level of care he received at MCF Michigan, contending that he was misdiagnosed or that the care he received otherwise did not cure him of his ailments. As previously stated, however, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker*, 599 F.2d at 575 n. 2.  Indeed, Roulhac avers that he received medical treatment at MCF Michigan for the pain in his legs in the form of injections, medication, and bed rest.  In addition, for emergency situations, such as when he allegedly fainted after coughing up blood, Roulhac pleads that he was taken "back and forth" to Hackley for examination and treatment.  Thus, to the extent that Bergman, Curley, and the John Does had any personal involvement, there is nothing in Roulhac's pleadings to plausibly show that they acted with deliberate indifference to his medical needs, and I will not second-guess the medical judgments that were made during his imprisonment at MCF Michigan. Roulhac's Eighth Amendment claim against Bergman, Curley, and the John Does should, therefore, be dismissed.

### 2. The Fourteenth Amendment.

In this instance, Roulhac claims that Bergman, Curley, and the John Does discriminated against him in violation of the Equal Protection Clause. Specifically, Roulhac claims that he was treated differently, with respect to the level of medical care he received, because he was a Pennsylvania prisoner.

As discussed, *supra*, Roulhac must plausibly show that he was intentionally treated differently from others similarly situated and that there was no rational basis for the treatment. *Pressley*, 365 F. App'x at 331 (citing *Phillips*, 515 F.3d at 243). Here, Roulhac provides threadbare allegations that he was discriminated against because of his status as a prisoner from Pennsylvania. Noticeably missing, however, are sufficient allegations demonstrating that Michigan prisoners, similarly situated, in terms of their medical condition, received different, faster, or more comprehensive medical treatment(s). Such allegations are especially critical in a case such as this, where Roulhac elsewhere sets forth that he received some level of medical care, or treatment, while imprisoned at MCF Michigan. As his pleadings are devoid of the described allegations, Roulhac's equal protection claim against Bergman, Curley, and the John Does should be dismissed.

### 3. Civil Conspiracy.

Here, Roulhac's civil conspiracy claim against Bergman, Curley, and the John Does, should be dismissed for the reasons set forth *supra* and for the reasons

set forth in my previous Report and Recommendation (*Doc.* 67) where I recommended that the same claim be dismissed with respect to Hackley. Roulhac does not set forth anything new or additional with respect to Bergman, Curley, and the John Does, so as to treat this conspiracy claim any differently from those previously addressed.

## IV.   <u>Leave to Amend</u>.

The Third Circuit has taken a liberal approach to granting leave to amend pleadings, observing that leave should be granted freely in order to ensure that a particular claim is decided on "the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Furthermore, *pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245–46 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Dismissal without leave to amend, however, is justified on grounds of bad faith, undue delay, prejudice, or futility. *Alston*, 363 F.3d at 235–36.

In the case *sub judice*, I recommend that Roulhac not be granted leave to amend for a second time. Permitting Roulhac an opportunity to amend would not only be prejudicial to all of the remaining defendants, who have been a part of this case since the original complaint was filed nearly two and one-half years ago, but it would also be futile. Roulhac has been given leave to amend on another occasion,

but he failed to cure the deficiencies contained in his pleadings. Furthermore, Roulhac's amendment was not only filed past the established deadline, but he has given me no reason to believe that leave to amend, for a second time, would bring him any closer to satisfying the federal pleading standards.

## V.   **Recommendations.**

For the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Roulhac's complaint (*Doc.* 1) and amended complaint (*Doc.* 45) be

   **DISMISSED** against all remaining defendants;

(2) the Commonwealth Defendants' motion to dismiss (*Doc.* 54) be

   **GRANTED**;

(3) Curley's motion to dismiss or, in the alternative, for summary judgment

   (*Doc.* 61) be **GRANTED**; and

(4) leave to amend be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the

report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **16th** day of **July, 2014**.


**_S/ Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge